Mitchell A. KRAMER and David C. Harrison

v.

SCIENTIFIC CONTROL CORP. et al.

Civ. A. No. 71–1954.

United States District Court, E. D. Pennsylvania.

Sept. 27, 1973.

As Amended Nov. 27, 1973.

See also, D.C., 352 F.Supp. 1175.

---

Robert M. Britton, Philadelphia, for plaintiffs.

Albert Momjian, Donald A. Scott, William H. Lowery, Philadelphia, for defendants.

## OPINION AND ORDER

BECHTLE, District Judge.

Plaintiffs, two Philadelphia lawyers, allege in their complaint that on January 6, 1969, they purchased, as joint tenants, 50 shares of stock of Scientific Control Corp. ("Scientific"),[1] in the Eastern District of Pennsylvania, in reliance on a prospectus considered acceptable for filing and use by the Securities Exchange Commission ("SEC"), as well as upon financial reports and other data of Scientific regarding the corporation's financial condition, which deceived them of the true worth of the stock. They sold the stock one month later for a loss of approximately $400. Eighteen months and three days later, claiming to represent a class of more than 3,000 holders of Scientific stock purchased during the thirteen-month period between October 31, 1968 (the effective date of registration and original offering of the stock), and November 21, 1969, the day it filed a petition for an arrangement under Chapter XI, of the Bankruptcy Act,[2] they filed their complaint on August 9, 1971, for damages pursuant to certain sections of the Securities Act of 1933[3] and the Securities Exchange Act of 1934,[4] the rules and regulations thereunder,[5] and common-law fraud principles against fourteen defendants.

Three months later, plaintiffs filed an amended complaint dropping nine defendants and adding fifteen others, making a total of twenty. The defendants are Scientific; H. L. Federman & Co.; Kleiner, Bell & Co., Inc., the principal underwriters of the issuance of 400,000 shares of Scientific common stock;[6] Arthur Andersen & Co., the accountant for Scientific; and, sixteen individuals who acted as officers and/or directors of Scientific during the relevant time period specified in the complaint.

Fourteen of the defendants have filed motions to dimiss the complaint on various grounds or to quash service of process.

---

1. Scientific is in the business of the design, manufacture, sale and maintenance of small, general purpose computers, and data processing equipment. Its principal place of business is in Carrollton, Texas.

2. The petition, Bankruptcy Action No. 3–1446, was filed in the United States District Court for the Northern District of Texas, Dallas Division.

3. Sections 11, 12(2), 15 and 17(a), 15 U.S.C. §§ 77k, 77*l*(2), 77o and 77q(a).

4. Sections 9(a)(4), 10(b) and 18, 15 U.S.C. §§ 78i(a)(4), 78j(b) and 78r.

5. Mainly, SEC Rule 10b–5, 17 C.F.R. § 240.-10b–5.

6. These two defendants admit that they were the underwriters of a secondary issue of shares of Scientific stock (aggregating 400,000 shares), consisting of 200,000 for the account of Scientific and 200,000 for "selling shareholders."

## I. JURISDICTION OVER THE SUBJECT MATTER

■ Plaintiffs bring this action to enforce a liability created by the Federal securities anti-fraud acts,[7] SEC Rule 10b–5 and common-law fraud principles. Their claim is a substantial one. This Court has jurisdiction over the subject matter of this action. See, *e. g.,* Rosen v. Albern Color Research, Inc., 218 F.Supp. 473, 474–475 (E.D.Pa.1963). It also has pendent jurisdiction over the state common-law claim. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Puma v. Marriott, 294 F.Supp. 1116 (D.Del.1969); Emerson v. Falcon Manufacturing, Inc., 333 F.Supp. 888 (S.D.Texas, 1971); 8 A.L.R. Fed. 533–538.

## II. VENUE

Regarding venue, § 22(a) of the 1933 Act provides: "Any such suit or action may be brought in the district wherein [1] the defendant is found or [2] is an inhabitant or [3] transacts business, or [4] *in the district where the offer or sale took place, if the defendant participated therein."* Section 27 of the 1934 Act states: ". . . Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder . . . may be brought . . . [(1) *in the district wherein any act or transaction constituting the violation occurred]* or [2] in the district wherein the defendant is found or [3] is an inhabitant or [4] transacts business, and process . . . may be served in any other district of which the defendant is an inhabitant . . ."

■ Defendants William C. Weatherford and Van Calvin Ellis contend they did not participate in the offer to sell or the sale itself for two reasons: (1) They were "outside" directors of Scientific and their only participation in the events was the signing of the Registration Statement and the prospectus; and, (2) plaintiffs purchased their stock in the "aftermarket" and not in the original offering. The meaning of the words "if the defendant participated therein" in § 22(a) of the 1933 Act should not be confused with defenses which a particular defendant may raise and prove at trial. For purposes of this section, a director who signs the Registration Statement participated in the offer or sale of the securities involved, even though the sale occurred after the original offering. See, Rosenberg v. Globe Aircraft Corporation, 80 F.Supp. 123, 125 (E.D.Pa.1948); Lester v. Preco Industries, Inc., 282 F.Supp. 459 (S.D.N.Y.1965).

■ There is a more liberal view, contra to that expressed in the *Rosenberg* case, *supra,* 80 F.Supp., at 125, that a defrauded buyer, in suing under § 10(b) of the 1934 Act and SEC Rule 10b–5, is free of the restrictions of the 1933 Act. See, *e. g.,* Dauphin Corporation v. Redwall Corporation, 201 F.Supp. 466 (D.Del.1962). Under this view, the requirement of the venue provision of § 22(a) of the 1933 Act as to the district where the offer or sale took place, "if the defendant participated therein," need not be met. Inasmuch as the defendants objecting to venue are parties alleged to be, or who may be deemed, participants in the sale of stock, the more liberal view need not be followed here in deciding the venue question.

■ Paragraph 7 of the amended complaint alleges that, at all relevant times, defendant George Jaggers was a director of Scientific. In his brief, Jaggers states in support of his motion to dismiss that he is not a participant in

---

7. Section 22(a) of the 1933 Act, 15 U.S. C. § 77v(a), provides: "(a) The district courts of the United States . . . shall have jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter . . . ." Section 27 of the 1934 Act, 15 U.S.C. § 78aa, provides: "The district courts . . . shall have exclusive jurisdiction . . . of all suits . . . brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder . . . .".

the sale of stock because he did not become a director of Scientific until August 26, 1969, almost ten months after the date of the Registration Statement. The Court may not consider this item of information supplied by him in his brief, since it does not appear in affidavit form. Moreover, the complaint alleges a conspiracy among the defendants. This allegation is sufficient to meet the requirements of § 22(a) regarding Jaggers. A director need not be an active participant in the corporation's fraudulent practice in connection with the sale of securities. It is enough if he approved that practice. See, Sprayregen v. Livingston Oil Company, 295 F.Supp. 1376 (S.D.N.Y.1968).

With the exception of Jagger's motion, which will be denied at this time without prejudice, the motions to dismiss for lack of venue will be denied.

## III. JURISDICTION OVER THE PERSON

Except for the firm of Arthur Andersen & Co., all of the defendants which could be located by a Deputy United States Marshal were "served" with process beyond the borders of Pennsylvania. A number of such individual defendants have moved to dismiss the complaint for lack of jurisdiction over the person. The bases for their motions include one or more of the following grounds: (1) He is not an inhabitant of this judicial district; (2) he has not purposefully availed himself of the privilege of conducting activities within Pennsylvania; (3) he has not been found in, nor has he submitted himself to, this district for purposes of service; (4) he has not had sufficient minimum contacts with this district and, consequently, the maintenance of the action against him here will offend traditional notions of fair play and substantial justice; (5) he was an "inactive" or "outside" director of Scientific and his only participation in the events was his signing the Registration Statement and prospectus; (6) he did not participate in the offer or sale of the stock complained of in this ac-

tion; and, (7) the process is insufficient because the summons served upon him failed to conform to the requisites of Rule 4(b), Fed.R.Civ.P., in that it does not have the Seal of the Court impressed on it nor is it directed to him.

Both § 22(a) of the 1933 Act and § 27 of the 1934 Act provide that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

■ Since none of the objecting defendants has asserted that he was neither an inhabitant nor found in the district in which he was eventually "served" with process, this Court does not lack jurisdiction over the person of any defendant on the basis of either grounds 1, 2, or 3.

■■ As to ground 4, regarding the claim of insufficient minimum contacts with this district, it must be remembered that the United States is one jurisdictional area, even though it may be divided into 50 states and numerous judicial districts. Congress does not have to resort to the concept of a "long-arm" statute which brings into play considerations of "presence" or "minimum contacts" when the issue of eligibility to be served by state process is a question in a litigation. Rather, Congress has the power to provide for the reach of service of process to the outer limits of the reach of its legislative power which, of course, is anywhere in the United States or its territories. Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 442, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946). If suit under the Federal securities anti-fraud acts and rules thereunder is brought in a Federal court, the purchaser has the privilege of nationwide service of process. Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 185, 98 L.Ed. 168 (1953). The issue here is not one of constitutional due process but one of compliance with the statute and the Federal Rules of Civil Procedure. Robinson, et al. v. Penn Central Co., et al, 484 F.2d 553 (3rd Cir. 1973); Gottlieb v. Sandia American Corporation, 452 F.2d

510, 513 (3rd Cir. 1971). The motions based on this ground will be denied.

Grounds 5 and 6 are a basis for objecting to venue and not service of process, and they have been disposed of under my ruling on the objections to venue.

Regarding ground 7, defendant Donald G. O'Neal, Scientific's vice-president of engineering, claims the process is insufficient in that the summons did not conform to Rule 4(b). The official file in this action contains an original summons [8] "on amended complaint" (Document No. 33) issued pursuant to Rule 4, Fed.R.Civ.P., with the name of this Court and the names of the parties, directed to the named defendant, signed by a deputy to the Clerk of this Court, dated November 12, 1971, and impressed with the Seal of this Court in the lower left-hand corner. One of the returns of the United States Deputy Marshal states that O'Neal was served in Carrollton, Texas, on November 29, 1971. Consequently, he cannot argue that he was not given sufficient notice of this action. He has not attached to his motion to dismiss, as an exhibit, the summons or a copy of the summons served upon him; nor has he asserted any material prejudice to his substantial rights resulting from the alleged absence of the Seal. Under these circumstances, I will deny his motion on this ground. One of the purposes of Rule 4(b) is to make sure that the summons is issued, as it was in this case, by the Clerk of Court and not by the plaintiff or his attorney.[9] Here, O'Neal was served apparently with a photographic copy of the summons. This is permissible, as explained in 2 Moore's Federal Practice (2d ed.), ¶4.06, under the heading "Separate and Additional Summons," as follows:

"The second sentence of Rule 4(a) provides that upon request of the plaintiff 'separate or additional summons shall issue against any defendants.' The purpose of the provision for 'separate' summons is to permit the plaintiff, in a case involving more than one defendant, to secure the issuance of (1) a single summons directed to all the defendants, in which event there is only one original summons, or (2) separate summons, each directed to one or more of the defendants, in which event there are as many original summons as there are separate summons. The use of a single summons may sometimes effect a saving in fees. Separate summons, on the other hand, may avoid possible confusion in a case involving a large number of defendants. In this respect, Rule 4(a) adopts substantially, but not literally, the former equity practice as prescribed in the last sentence of former Equity Rule 12, which permitted the plaintiff to sue out a "joint" summons against all defendants or a separate summons against each defendant." (Footnotes omitted.)

By reason of the foregoing, the motion to dismiss based on ground number 7 will be denied.

## IV. ALLEGATIONS OF FRAUD

Defendant Arthur Andersen & Co., joined by most of the other defendants that have been served in this action, has moved to dismiss the amended complaint under Rule 12(b)(6), Fed. R.Civ.P., for the alleged failure of plaintiffs to comply with the requirement of Rule 9(b), which provides: "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Upon reading the amended complaint, it is easy to see that the bulk of the allegations of the complaint are set forth in a form style which is suitable, upon substitution of names, places and dates, for almost any claim under the Federal securities anti-fraud statutes initiated by a purchaser of securities.

---

8. See, Appendix of Official Forms, Form 1, as amended.

9. See, 2 Moore's Federal Practice (2d ed.) ¶ 4.07[1], p. 996 n. 2.

However, in paragraph 30 of the amended complaint, it is averred that some of the omissions of material facts in the prospectus include, but are not limited to, those set forth. Two of the omissions are said to be the failure to include in the supporting financial data a liability of $500,000 incurred by Scientific before the date of the prospectus and the fact that all accounts receivable had been pledged as collateral for obligations incurred by Scientific. Admittedly, the averment mentioning the $500,000 item does not describe it as having been borrowed by Scientific from the Republic National Bank of Dallas, Texas,[10] nor does the averment as to the pledging of assets describe what the "obligations" were for which the receivables were pledged.[11] Nevertheless, in my view, these two items are stated with sufficient particularity to satisfy Rule 9(b). See, Gottlieb v. Sandia American Corporation, 35 F.R.D. 223 (E.D.Pa.1964).

The allegations in paragraph 26 of the amended complaint do not meet the requirement of Rule 9(b) regarding the stating of fraud with particularity. "State-law mismanagement claims cannot be transformed into federal claims under Rule 10b–5, however, merely by means of general conclusionary allegations where one would otherwise not exist." [Cited cases omitted.] Herpich v. Wallace, 430 F.2d 792, 808 (5th Cir. 1970). Yet, they are sufficient to put defendants in control of Scientific on notice that a claim of mismanagement of that corporation under state law is being made.

## V. FEDERAL CIVIL PROCEDURE RULE 12(b)(6) DEFENSE

The defendants Kleiner-Bell & Co., Inc., and Arthur Andersen & Co., joined by a number of the other served defendants, have raised by motion under Rule 12(b)(6), Fed.R.Civ.P., the defense of the failure of the amended complaint to state a claim upon which relief can be granted against them. A number of reasons are given:

(1) The amended complaint does not expressly allege that plaintiffs relied on the Registration Statement. However, this omission must be a mere oversight. Paragraph 31 states in part: "Plaintiffs purchased stock relying on the statements made in the Prospectus as well as *other written and oral information* the Company's financial condition and prospects . . ." (Italics supplied.) This averment is sufficient to include the Registration Statement. The prospectus was contained within the Registration Statement, and both were filed together on the same day.

(2) The amended complaint does not identify the plaintiffs' immediate seller of the securities in question. Some of the defendants say the reason for this omission is that the plaintiffs did not purchase their small block of stock as part of the original offering made by Scientific pursuant to the Registration Statement and prospectus. They add that the plaintiffs bought their stock in an over-the-counter brokerage transaction in the "aftermarket"; therefore, they had no right to rely on the Registration Statement and prospectus. Sec-

---

10. Scientific's petition for an arrangement disclosed that it had borrowed $500,000 from the Republic National Bank of Texas on October 11, 1968, which date was twenty days before it filed the Registration Statement apparently based on a balance sheet as of April 30, 1968. The inclusion of the amount of the loan in the October 31, 1968, Registration Statement would have increased Scientific's current liabilities by almost 50%. Failure to disclose this type of information can be the basis of an action under the Federal securities anti-fraud laws and regulations. See, Fischer v. Kletz, 266 F.

Supp. 180 (S.D.N.Y.1967), where a complaint under the 1934 Act against accountants for omitting to disclose after-acquired information that a corporation's financial statement was false was held sufficient as against a motion to dismiss.

11. Alongside item 12 of the Statement of Affairs in conjunction with the arrangement proceeding in the United States District Court in Dallas, Texas, Scientific states: "All accounts receivable are pledged as collateral for loans by the Republic National Bank of Dallas under a General Security Agreement dated July 27, 1969. . ."

tion 11 of the 1933 Act does not require that the securities be acquired from the original offering. Under that section, a purchaser is presumed to have relied on the prospectus if he purchased within twelve months of the offering. See, Weiss v. Tenney Corp., 47 F.R.D. 283, 288 (S.D.N.Y.1969). Note that plaintiffs aver that they purchased the stock within three months of the offering. See paragraphs 11 and 27 of the amended complaint. The motions to dismiss on this ground will be denied.

 (3) The fact that the price per share (i. e., $36.75) for which plaintiffs assert that they sold their stock was, evidently by sheer coincidence, exactly the same as the public offering price in the October 31, 1968, prospectus will not prevent them from recovering damages in this action. The measure of damages in their action is the difference between the price they paid for the stock and the amount they received when they later sold it, provided that this difference did not exceed the price at which it was offered to the public. See, § 11(e) and (g) of the 1933 Act; Chasin v. Smith, Barney and Co., 438 F.2d 1167, 1173 (2d Cir. 1971); Sarlie v. E. L. Bruce Co., 265 F. Supp. 371, 376 (S.D.N.Y.1967). Here, plaintiffs say the difference was less than $8.00 per share. The motion to dismiss on this ground will be denied.

 (4) The claim made under § 9(a)(4) of the 1934 Act cannot stand because of the failure of the plaintiffs to allege that the stock they acquired was "registered on a national securities exchange." Dorfman v. First Boston Corporation, 336 F.Supp. 1089, 1097 (E. D.Pa.1972). Therefore, the motion to dismiss on this ground will be allowed. Such failure, however, is not fatal to the claim under § 10(b) [12] and § 18 [13] of the 1934 Act, and SEC Rule 10b–5. It is established that a private right of action is implied under § 10(b) of the 1934 Act. Superintendent of Ins. of N. Y. v. Bankers Life and Cas. Co., et al, 404 U. S. 6, 13 n.9, 92 S.Ct. 165, 169 n.9, 30 L. Ed.2d 128 (1972). Neither § 10(b), nor § 18, nor SEC Rule 10b–5 require that the securities acquired be registered on a national securities exchange. The motion to dismiss under these sections and rule will be denied.

12. § 10(b) specifically provides: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange — . . . (b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." [15 U.S.C. § 78j(b).]

13. § 18 provides: "(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant. (b) Every person who becomes liable to make payment under this section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment. (c) No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." [15 U.S.C. § 78r.]

(5) In addition to alleging that the omission of facts was material, paragraph 29 of the amended complaint avers: "The publications and statements and omissions therein were published for the purpose of misleading plaintiffs and other members of his class concerning the true worth of the stock and induced them to purchase the stock." Without deciding that averments amounting to scienter on the part of defendants are required in the complaint in actions of the one here involved,[14] I think the above-quoted averment amounts to alleging scienter or the intent to defraud. The motions to dismiss on this ground will be denied.

(6) Defendants Williams and Ellis contend that the amended complaint discloses that they "were non-management outside directors of Scientific whose only participation in any of the events out of which liability is claimed to arise is that they signed the Registration Statement as directors and their names appear as directors in the Prospectus." Contrary to this contention, paragraph 7 of the amended complaint avers that these two defendants, as well as the other named directors, "were at all relevant times hereto directors of Scientific." Their signing of the statement is sufficient to make them proper defendants in this action under the allegations of the complaint.

(7) Defendant Jaggers contends that, since he was not a signer of the Registration Statement or a director at the time of filing or named in the statement as "about to become" a director, he could not be liable under § 11 of the 1933 Act and adds that plaintiffs could readily determine all this from the statement on which they claim to have relied. As pointed out under the ruling on venue, statements of facts in a brief, unless agreed to by the opposing party, may not be accepted as true. Moreover, plaintiffs may be able to show that Jaggers ratified past conduct of Scientific claimed by plaintiffs to be the basis for this action.

(8) The amended complaint does not allege privity between plaintiffs on one side with either Kleiner-Bell & Co., Inc., or H. L. Federman & Co., the underwriters, on the other in the acquisition of the fifty shares of stock. This omission, these underwriters say, is fatal to plaintiffs' claim under §§ 12(2), 15 and 17(a) of the 1933 Act. For the reasons well stated in Dorfman v. First Boston Corporation, *supra*, 336 F.Supp., at 1091–1096, their motion will be allowed as to the claim under §§ 12(2), 15, 17(a)(2). With regard to §§ 17(a)(1) and 17(a)(3), it will be denied.

## VI. MOTION FOR A MORE SPECIFIC STATEMENT

Defendants John B. Baird, president of Scientific during the relevant times stated in the amended complaint, and Kleiner-Bell have moved under Rule 12(e), Fed.R.Civ.P., to require plaintiffs to file a more definite statement of their supposed claim, because it is so vague and ambiguous that a responsive pleading cannot reasonably be framed by them. I agree that a number of the allegations are general, conclusory and, in a number of instances, merely following the wording of the securities acts. However, I have ruled that two matters said to be material and omitted from the prospectus have been stated with sufficient particularity to meet the requirements of Rule 9(b) and that the

---

14. In his concurring and dissenting opinion in Kohn, Trustee, et al. v. American Metal Climax, Inc., et al., 458 F.2d 255, 270 (3rd Cir. 1972), a case involving material misrepresentation of facts in proxy material, Circuit Judge Adams wrote, at p. 287: "[W]here the management or board of directors of a corporation is either acting in their self interest, or for a controlling third party . . . the shareholder is helpless unless he knows of the conflict of interest and has access to sufficient facts to reach a valid independent judgment. Hence, in self-dealing transactions, it does not seem unreasonable for courts, in an effort to achieve the required disclosure, to react by apparently lowering the standard of actionable conduct."

amended complaint asserts facts upon which relief may be granted. In view of the fact that the defendants are numerous and are represented by different attorneys, it seems more appropriate to conclude that the discovery route, rather than the pleading route, will best serve the need to fully and promptly articulate the underlying evidentiary detail claimed by plaintiffs to support the fraud charge. I will deny the motion for a more specific statement.

## VII. CLASS ACTION OBJECTIONS

At the outset, some of the defendants have moved to dismiss this action for the asserted reason that in the present case plaintiffs are lawyers whose obvious interest in pursuing this litigation is not to recover the $400 they lost on a "flyer" in the stock market, but to profit from court-awarded counsel fees. They add that plaintiffs' small loss is an amount to be anticipated in the normal course of events in instances of stock of this type and is not enough in itself to justify setting in motion a class action against multiple defendants. Since this suit was brought as a purported class action, it must be treated as such until there is a full determination that a class action is not proper. Kahan v. Rosenstiel, et al., 424 F.2d 161, 169 (3rd Cir. 1970). Further, maintenance of a class action is not subject to valid criticism on the ground that it serves as a device to provide fees for attorneys. Dolgow v. Anderson, 43 F.R.D. 472 (E. D.N.Y.1968). I decline to dismiss the action on these grounds.

### ORDER

And now, to wit, this 27th day of September, 1973, for the reasons stated in the foregoing Opinion, it is ordered that:

(1) The motions of defendants to dismiss the claims under § 9(a)(4), 15 U. S.C. § 78i(a)(4), and the motions of defendants Kleiner-Bell & Co., Inc., and H. L. Federman & Co., to dismiss the claims as to them under §§ 12(2), 15, and 17(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77l(2), 77o, and 77q (a)(2) are granted;

(2) The motion of defendant George Jaggers to dismiss as to him for lack of venue is denied without prejudice; and,

(3) The motions of defendants to dismiss the complaint on other grounds are denied.